UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BRIAN EUGENE HUX,                    )
                                     )    Case No: 3:23-CV-366
        *Plaintiff*,                 )
                                     )    Judge Curtis L. Collier
v.                                   )
                                     )    Magistrate Judge Poplin
RANDALL WILLIAMS, KNOX               )
COUNTY, TENNESSEE, and               )
JOHN AND JANE DOES 1-5,              )
                                     )
        *Defendants*.                )

## M E M O R A N D U M

Before the Court is a motion by Defendant Randall Williams to dismiss the amended

complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 21.) Plaintiff has

responded (Doc. 26) and Defendant has replied (Doc. 29). Plaintiff's claims arise from Defendant

executing a law enforcement stop of Plaintiff. Defendant argues Plaintiff fails to state a claim, and

Defendant is entitled to qualified immunity. (Docs. 21, 29.)

On October 10, 2023, Plaintiff filed a complaint against Defendant, Knox County,

Tennessee, and unidentified John and Jane Does 1-5. (Doc. 1.) Plaintiff invoked 42 U.S.C.

§§ 1983 and 1988, and Tennessee state law as the legal basis for his complaint. (Doc. 1 at 14–

30.) He asserted claims for excessive force, wrongful stop and seizure, failure to train and

supervise, battery, negligence, and reckless or intentional infliction of emotional distress. (*Id.*) On

January 26, 2024, Plaintiff amended his complaint. (Doc. 20.) Plaintiff's amended complaint

contains the same legal claims raised in his original complaint. (*Compare* Doc. 1 *with* Doc. 20.)

Plaintiff specifically alleges claims of unlawful stop and seizure, excessive force, battery,

negligence, and reckless or intentional infliction of emotional distress against Defendant. (Doc. 20.)

I. **BACKGROUND**[1]

At the relevant time, Defendant was a Knox County Sheriff's Office Deputy. (*Id*. ¶ 3.) Plaintiff's claims stem from a stop conducted by Defendant on October 10, 2022. (*Id.* ¶¶ 32–36.) Most of the relevant altercation was captured by Defendant's body camera. (*Id*. ¶ 3; *see* Doc. 16.) The parties disagree about many of the facts of the encounter. At the motion to dismiss stage, "[i]f there is a factual dispute between the parties, [the Court] can only rely on the video[] over the complaint to the degree the video[] [is] clear and 'blatantly contradict[s]' or 'utterly discredit[s]' the plaintiff's version of events." *Bell v. City of Southfield, Mich.*, 37 F.4th 362, 364 (6th Cir. 2022). Unless the video blatantly contradicts or utterly discredits Plaintiff's version of the events, the Court "must accept [Plaintiff's] version as true." *Id.* The Court must "view any relevant gaps or uncertainties left by the videos in the light most favorable to the Plaintiff." *Latits v. Phillips*, 878 F.3d 541, 544 (6th Cir. 2017).

On October 10, 2022, Defendant had heard a "be on the lookout" ("BOLO") transmission about Matthew Messer ("Messer"), a thirty-four-year-old, "white, [six]-foot-tall male, with long brown hair, who was on a police hold but not in custody" after leaving the nearby University of Tennessee Medical Center ("UTMC"). (Doc. 20 ¶ 4 (internal quotations omitted).) Plaintiff was thirty years older than Messer, several inches shorter, and had long purple hair. (*Id*.) At approximately 4:18 p.m., Plaintiff was walking in the grass on the side of a road when Defendant

---

[1] This summary of the facts accepts all the factual allegations in Plaintiff's complaint as true, *see Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

2

"spotted him and exited his cruiser." (*Id*. ¶ 3.) The body camera video begins with Defendant driving his police vehicle. (Doc. 16 at 16:17.)

As shown in the video, Defendant exited his car and began approaching Plaintiff. (Doc. 16 at 16:17:35–16:17:46.) As Defendant approached Plaintiff, he instructed Plaintiff to "come here." (*Id*. at 16:17:47.) Plaintiff responded, "what for?" (*Id*. at 16:17:48.) Defendant again stated, "come here man." (*Id*. at 16:17:49.) Plaintiff again responded, "what for?" (*Id*. at 16:17:50.) At that point, Defendant began to run toward Plaintiff. (*Id*. at 16:17:51–16:17:53.) In response, Plaintiff also sped up. (*Id*. at 16:17:53–16:17:54.) Plaintiff alleges he was "hurrying along, hardly 'running' or in 'full flight,' but perhaps 'high-stepping.'" (Doc. 20 ¶ 34.) But the body-camera video clearly shows Plaintiff speed up in response to Defendant's pursuit. (*See* Doc. 16 at 16:17:53–16:17:54.) Accordingly, the Court finds that Plaintiff had begun to run from Defendant after Defendant began running toward Plaintiff.

As Defendant pursued Plaintiff, he told Plaintiff that he was going to tase him. (Doc. 16 at 16:17:53–16:17:55.) Defendant's taser entered the camera view as Defendant Williams told Plaintiff he was going to tase him. (*Id*.) Seconds later, Plaintiff was hit with the taser and fell to the pavement. (*Id*. at 16:17:56–16:18:01.) Defendant then called for backup while telling Plaintiff to remain lying on his stomach. (*Id*. at 16:18:01–16:18:27.) After Defendant handcuffed Plaintiff, Defendant asked Plaintiff "why are you running from the cops?" (*Id*. at 16 at 16:21:46.) Plaintiff stated that he had a warrant. (*Id*. at 16:21:55.) Defendant responded, "look at all this you caused because you decided to run." (*Id*. at 16:22:00–16:22:05.) The body camera footage also shows assistance arriving to the scene and Defendant traveling to the hospital, but the Court need not

recount the portions of the video unrelated to Plaintiff's unlawful stop and seizure and excessive force claims.

## II. <u>STANDARD OF REVIEW</u>

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera*, 551 F.3d at 466 (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 49 F.3d 710, 716 (6th Cir. 2005)). The court is not, however, bound to accept bare assertions of legal conclusions as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In deciding a motion under Rule 12(b)(6), a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

4

### III. __DISCUSSION__

Defendant moves to dismiss Plaintiff's amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 21.) Defendant argues that he is entitled to qualified immunity. Plaintiff argues he has alleged enough plausible facts to survive Defendant's motion to dismiss and thatit would be premature to grant Defendant qualified immunity at this stage of the case.

### A. Fourth Amendment Claims

Plaintiff asserts two claims against Defendant under 42 U.S.C. § 1983 for violation of his Fourth Amendment rights: (1) wrongful stop and seizure and (2) excessive force. (Doc. 20 ¶¶ 54–91.)

"Section 1983 creates a cause of action against any person who, acting under color of state law, abridges 'rights, privileges, or immunities secured by the Constitution and laws.'" *Clayton v. Hogan*, No. 3:22-cv-00936, 2023 U.S. Dist. LEXIS 205431, at *70 (M.D. Tenn. Nov. 16, 2023) (citing 42 U.S.C. § 1983). "Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citation omitted). "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (citation omitted).

Defendant argues Plaintiff's § 1983 claim against him should be dismissed because he is entitled to qualified immunity. (Doc. 21 at 7, 9.) Plaintiff argues that considering qualified immunity at this stage of the case is premature. (Doc. 26 at 9–10.) The Court will first outline the

5

standard for reviewing qualified immunity at the motion to dismiss stage and then analyze the parties' specific arguments.

### 1.    Qualified Immunity Standard

While the Court of Appeals for the Sixth Circuit has stated that "courts should refrain from using qualified immunity at the motion-to-dismiss stage," this is "only a general preference, not an absolute one." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020) (quotation and citation omitted). "Defendants may raise the qualified immunity defense in response to a 12(b)(6) motion because it is 'an immunity from suit rather than a mere defense to liability.'" *Id.* at 761–62 (quoting *Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019).. For this reason, "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery." *Johnson v. Mosely*, 790 F.3d 649, 653 (6th Cir. 2015). Accordingly, the Court will consider whether Defendant is entitled to qualified immunity.

"After a defending officer initially raises qualified immunity, the plaintiff bears the burden of showing that the officer is not entitled to qualified immunity." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citation omitted). "Officers are entitled to qualified immunity unless they (1) violated a constitutional right (2) that was 'clearly established' at the time of the wrongdoing." *Bell*, 37 F.4th at 367 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "The doctrine protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) (quoting *Humphrey v. Mabry,* 482 F.3d 840, 847 (6th Cir. 2007)). "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015) (quoting *Saucier v. Katz*, 553 U.S. 194,

202 (2001)).  To meet this standard, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted).

Plaintiff asserts his Fourth Amendment rights were violated by Defendant stopping and seizing him, and using excessive force against him.  (Doc. 20 ¶¶ 80, 84.)

### 2.      Wrongful Stop and Seizure

The Court first considers Defendant's motion to dismiss Plaintiff's wrongful stop and seizure claim.  The Fourth Amendment prohibits "unreasonable ... seizures" to protect "[t]he right of the people to be secure in their persons."  U.S. Const. amend. IV.  It is well established that "[u]nder the Fourth Amendment, there are three types of permissible encounters between police and citizens: consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; a temporary involuntary detention or *Terry* stop which must be predicated upon 'reasonable suspicion;' and arrests which must be based on probable cause."  *United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004) (quoting *United States v. Bueno,* 21 F.3d 120, 123 (6th Cir. 1994)).

The parties seem to agree that the interaction between Defendant and Plaintiff began as a *Terry* stop rather than a consensual encounter.  (*See* Doc. 20 at 27; Doc. 21 at 8.)  The Court agrees. *See United States v. Taylor*, No. 1:21-cr-759, 2024 U.S. Dist. LEXIS 4747, at *6 (N.D. Ohio Jan. 9, 2024) ("For the purposes of the Fourth Amendment, a warrantless consensual encounter with a law enforcement officer largely resembles a consensual conversation."); *Dingess*, 411 F. App'x 853, 855 (6th Cir. 2011) (quoting *United States v. Gross*, 624 F.3d 309, 315 (6th Cir. 2010)) (holding one factor distinguishing a consensual encounter from a seizure is "the use of language

7

or tone of voice indicating that compliance with the officer's requests might be compelled"). Defendant initiated contact with Plaintiff by exiting his vehicle and ordering Plaintiff to "come here" while Defendant began approaching Plaintiff. (Doc. 16 at 16:17:47.) Plaintiff responded, "what for?" (*Id.* at 16:17:48.) Defendant again stated, "come here man." (*Id.* at 16:17:49.) Plaintiff again responded, "what for?" (*Id.* at 16:17:50.) This encounter did not "resemble[] a consensual conversation." *See Taylor*, No. 1:21-cr-759, 2024 U.S. Dist. LEXIS 4747, at *6. Rather, both Defendant's words and tone indicated that "compliance with [his] requests might be compelled." *See Dingess*, 411 F. App'x at 855 . As such, Defendant's interaction with Plaintiff was a *Terry* stop and required reasonable suspicion. *See Alston*, 375 F.3d at 411.

Regarding an investigatory detention, or *Terry* stop, "[w]hen an officer detains an individual 'for the purpose of requiring him to identify himself,' the officer 'perform[s] a seizure of his person subject to the requirements of the Fourth Amendment.'" *Gray v. Shelby Cty.*, No. 22-5542/22-5543/22-5544, 2023 U.S. App. LEXIS 21581, at *8 (6th Cir. Aug. 15, 2023) (quoting *Brown v. Texas*, 443 U.S. 47, 50 (1979)). This type of limited seizure requires "'reasonable suspicion' that criminal activity may be afoot." *Dorsey*, 517 F.3d at 395 (quoting *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968). "Reasonable suspicion exists where the officer can articulate specific, particularized facts that amount to more than a 'hunch' that criminal activity may be afoot." *United States v. Jeter*, 721 F.3d 746, 751 (6th Cir. 2013) (quoting *United States v. Young*, 707 F.3d 598, 604–05 (6th Cir. 2012)). "In examining the totality of the circumstances . . . the officer's reasonable suspicion need not arise exclusively from his own direct observations." *Dorsey*, 517 F.3d at 395 "Rather, it can be derived from such sources as informant

8

tips, dispatch information, and directions from other officers" *Id.* (citing *Smoak v. Hall*, 460 F.3d 768, 779 (6th Cir. 2006).

Defendant contends he had reasonable suspicion to make the *Terry* stop to determine whether Plaintiff was the person described in the BOLO. (Doc. 29 at 6.) According to Defendant, Plaintiff met the most important qualifications in the BOLO in that he was a white male in the vicinity of, and walking away from, UTMC on foot and Plaintiff's hair appeared to match the long brown hair described in the BOLO. (*Id.* at 5–6.) Defendant offers no other rationale for suspecting Plaintiff of criminal activity. (*See generally* Docs. 21, 29.) At this stage, however, the Court must view the facts in the light most favorable to Plaintiff, except to the extent they are blatantly contradicted by the video. *See Latits*, 878 F.3d at 544. At the relevant moment in the video, Defendant's hair color appears dark, but the video does not utterly discredit Plaintiff's allegation that the purple color of his hair was visible to Defendant. *See id.* The Court must accept as true Plaintiff's allegation that it was obvious that his physical appearance was distinguishable from the BOLO description such that he was clearly not the subject of the BOLO. Accordingly, the Court finds the BOLO description was inadequate to justify reasonable suspicion, and at the beginning of the encounter there was no other basis for Defendant to have reasonable suspicion that Plaintiff had engaged in criminal activity. Defendant, however, had not yet seized Plaintiff. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("[a]n arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority." (emphasis in original)).

After Defendant twice ordered Plaintiff to stop and Plaintiff did not comply, Defendant began to run toward Plaintiff. (Doc. 16 at 16:17:51–16:17:53.) In response, Plaintiff also sped up. (*Id.* at 16:17:53–16:17:54.) Plaintiff alleges he was "hurrying along, hardly 'running' or in 'full

flight,' but perhaps, 'high-stepping.'" (Doc. 20 ¶ 34.) But the body-camera video clearly shows Plaintiff ran from Defendant after Defendant began running toward him. (*See* Doc. 16 at 16:17:53–16:17:54.) As Defendant pursued Plaintiff, he told Plaintiff that he was going to tase him. (*Id*. at 16:17:53–16:17:55.) Seconds later, Defendant used the taser on Plaintiff and Plaintiff fell to the pavement. (*Id.* at 16:17:56–16:18:01.) The Court must next determine whether Plaintiff fleeing created reasonable suspicion for Defendant to conduct a *Terry* stop.

Defendant cites *Jeter* for the proposition that "[i]t is clearly established that 'an individual's unprovoked flight [is] sufficient to give officers a reasonable suspicion to conduct a *Terry* stop.'" (Doc. 21 at 9 (quoting *Jeter*, 721 F.3d at 753).) In response, Plaintiff argues his flight was not unprovoked, but rather Defendant provoked him to flee. (Doc. 26 at 15.) Plaintiff states he "was merely walking beside the road minding his own business" and "may not have tried to elude [Defendant] if [Defendant] had not charged at him." (*Id.* at 14.) He adds it is "logical for [Plaintiff] to have expected that [Defendant] meant to do [Plaintiff] harm." (*Id.*)

"A person's avoidance of an officer does not justify a *Terry* stop." *United States v. Whitson*, No. 3:10cr0236, 2011 U.S. Dist. LEXIS 106654, at *13 (M.D. Tenn. Sep. 20, 2011). "Similarly, a person's 'refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.'" *Id*. at *13–14 (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)). However, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citations omitted). In *Wardlow*, officers in a four-car caravan converged on an area known for narcotics trafficking in order to investigate. 528 U.S. at 121. As the cars passed the respondent, he looked toward the officers then fled through a gangway and an alley before the officers cornered him and

conducted a pat-down search. *Id*. at 121–22. The court held the respondent's presence in a "high crime area" and "his unprovoked flight upon noticing the police" were both factors in determining the officers had reasonable suspicion. *Id*. at 124. Specifically, the court stated "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id*. But the Supreme Court emphasized that its decision was consistent with *Florida v. Royer*, 460 U.S. 491 (1983) where it held "that when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business." *Wardlow*, 528 U.S. at 125 (citing *Royer*, 460 U.S. at 498).

In *Jeter*, officers descended on a parking lot outside a grocery store with police cruisers and a helicopter to "round up [a] group suspected of loitering." *Jeter*, 721 F.3d at 749–50. The officers mistook the defendant for someone they had observed earlier, and noticed he "wandered away on his bike." *Id*. at 750. Two of the officers pulled their police car into the grass, effectively blocking the defendant's pathway onto the street. *Id*. The defendant stopped and one of the officers exited the police car to speak with him. *Id*. The defendant looked at both officers, dropped his bicycle, and ran away. *Id*. The officers chased the defendant down an alley, and saw him clutch the front pocket of his shorts. *Id*. When the officers caught up to the defendant, they seized and searched him. *Id*. In *Jeter*, the Court of Appeals for the Sixth Circuit noted the lack of clarity regarding provocation of flight. *Id*. at 754. The court found the defendant's flight was unprovoked, and the officers had reasonable suspicion to seize him after he fled. *Id*. at 754–55. The court noted a number of specific facts to support its finding. The defendant was the only person to flee from the police presence in the parking lot. *Id*. at 755. In response to the officers asking to speak with

him, defendant fled "in a manner suggesting an attempt to escape from law enforcement." *Id*. at 754. He did not run to get out of the officer's way or back into the grocery store, but instead "purposefully ran down an alley, initiating a brief police chase." *Id*. As he fled, the defendant grabbed the front pocket of his shorts as he ran, "giving officers a belief that he possibly had contraband." *Id.* at 755. The Court of Appeals affirmed "that [the defendant's] flight, in combination with the grabbing of his pocket in a 'high crime area,' provides the inference of suspicious behavior that justifies a *Terry* stop under *Wardlow*." *Id*. at 755 (citing *Wardlow*, 528 U.S. at 124–25).

Unlike the officers in *Wardlow* and *Jeter*, Defendant initiated the chase in this case. Plaintiff was walking on the side of the road, and continued at a steady pace even as Defendant ordered him to "come here." Plaintiff was not legally required to stop and comply with Defendant's instruction. *See Wardlow*, 528 U.S. at 125. But when Plaintiff kept walking, Defendant immediately began running after him, and within seconds threatened to tase Plaintiff and did so. Plaintiff began to run away from Defendant only after Defendant initiated the chase. Plaintiff did not flee unprovoked. Additionally, there is no indication that Defendant considered Plaintiff to be in a "high crime area" or that there was reason to suspect Plaintiff had contraband or a weapon. Finally, taking as true the allegation that Defendant could see that Plaintiff's hair was purple as he approached Plaintiff further weakens any reasonable suspicion argument. (*See* Doc. 26 at 14.) Defendant did not have reasonable suspicion to seize Plaintiff even after Plaintiff began to run because his flight was not unprovoked. Viewing all facts in the light most favorable to the Plaintiff, Defendant did not have reasonable suspicion to make the *Terry* stop either before or after Plaintiff began to run.

Plaintiff contends that Defendant's use of the taser to carry out the seizure amounted to an arrest without probable cause. (Doc. 26 at 17.) But because the Court finds Defendant did not have reasonable suspicion to stop Plaintiff, it need not reach the question of whether the seizure became an arrest requiring probable cause. The Court finds Defendant's seizure of Plaintiff by tasing him violated Plaintiff's Fourth Amendment rights. Accordingly, Plaintiff must show that when Defendant used the taser, Plaintiff had a clearly established Fourth Amendment right not to be seized.

There is no question that a *Terry* stop requires reasonable suspicion and an arrest requires probable cause. In *Lewis*, the Court of Appeals for the Sixth Circuit held "the law clearly established limits on both the duration and nature of an investigatory stop." 779 F.3d at 416. Defendant cites *Jeter* for the proposition that "[i]t is clearly established that 'an individual's unprovoked flight [is] sufficient to give officers a reasonable suspicion to conduct a *Terry* stop." (Doc. 21 at 9.)

This Court does "not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *Pierce v. Bailey*, No. 1:22-cv-863, 2024 U.S. Dist. LEXIS 86806, at *16 (W.D. Mich. Apr. 26, 2024) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). While Plaintiff does not provide an analogous case addressing the specific factual scenario at issue here, precedent is clear that "when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business." *Wardlow*, 528 U.S. at 125. Further, a person's "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.' *Bostick*, 501 U.S. at 437. *Wardlow* and

13

*Jeter* provide that unprovoked flight may create reasonable suspicion, but neither suggest that provoked flight has the same effect. At the time of the seizure, it was clearly established that it was a Fourth Amendment violation to seize someone without reasonable suspicion and that provoking someone to flee by chasing them did not create reasonable suspicion.

Defendant is not entitled to qualified immunity at this stage of the case. Defendant's motion to dismiss Plaintiff's claim of unreasonable search and seizure will be **DENIED**.

### 3. Excessive Force

The Court turns next to Plaintiff's claim that Defendant violated his Fourth Amendment rights by using excessive force against him. As an initial matter, the Court considers Plaintiff's wrongful stop and seizure claim separately from his excessive force claim. *See Gray*, No. 22-5542/22-5543/22-5544, 2023 U.S. App. LEXIS 21581, at *19 (finding an excessive force claim is "independent of whether law enforcement had the power to [seize]" and "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim" (internal quotation omitted)); *see also Livermore v. Lubelan*, 476 F.3d 397, 407 (6th Cir. 2007). The parties do not dispute this approach. (Doc. 21 at 3; Doc. 26 at 20.)

The Fourth Amendment "protects individuals from the use of excessive force during an arrest or investigatory stop." *Lewis*, 779 F.3d at 418 (6th Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)). The Court of Appeals has stated that the proper approach to analyzing excessive force claims is to "first identify the 'seizure' at issue" and then to "examine 'whether the force used to effect that seizure was reasonable in the totality of the circumstances.'" *Lubelan*, 476 F.3d at 406 (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996)).

14

In *Graham*, the court identified three factors to guide the reasonableness test: "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the police officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Lubelan*, 476 F.3d at 404 (citing *Graham*, 490 U.S. at 396; *Smoak*, 460 F.3d at 783). "These factors are not an exhaustive list." *Id*. (citation omitted).

The Court first addresses the *Graham* factors. The severity of the crime at issue here is the severity of the crime for which Messer was suspected as that formed the basis for the interaction between Defendant and Plaintiff. Plaintiff asserts Messer was not a "fleeing felon," but rather on "police hold." (Doc. 20 ¶ 8.) Plaintiff argues the BOLO stated Messer was suspected of non-violent misdemeanor offenses. (Doc. 26 at 12.) There is no indication that Plaintiff posed an immediate threat to the safety of Defendant or others. Plaintiff actively fled after Defendant began running after him. The Court views the facts in the light most favorable to Plaintiff, but sets aside the issue of the unreasonableness of the seizure in evaluating whether Defendant's use of the taser on Plaintiff was excessive. *See Gray*, No. 22-5542/22-5543/22-5544, 2023 U.S. App. LEXIS 21581, at *19.

The alleged excessive force at issue here is Defendant's use of a taser on Plaintiff. Plaintiff asserts "other than tasing [Plaintiff], [Defendant] made no effort . . . to convince [Plaintiff] to stop." (Doc. 20 ¶ 56.) Plaintiff also alleges Defendant "had a variety of force-options available to him" yet Defendant "did not attempt . . . any other reasonable means of apprehension." (*Id.* ¶ 57.) "Instead of using verbal or other less dangerous options, or other de-escalation tactics, immediately after stopping his cruiser, [Defendant] decided to escalate the situation into a physical confrontation by tasing [Plaintiff] from behind where he would land face-first on the pavement."

15

(*Id.* ¶ 58.)  In response, Defendant argues he has qualified immunity because it was not clearly established that "deploying a [t]aser to stop a fleeing suspect after giving a warning constituted excessive force in violation of the Fourth Amendment."  (Doc. 21 at 7.)

The Court of Appeals for the Sixth Circuit has stated "that it is not excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest."  *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (emphasis removed; citations omitted).  "Fleeing from officers is active resistance."  *Perez v. Simpson*, 83 F.4th 1029, 1031 (6th Cir. 2023) (citing *VanPelt v. City of Detroit*, 70 F.4th 338, 340 (6th Cir. 2023)).  "Active resistance [also] includes 'physically struggling with, threatening, or disobeying officers.'"  *Rudlaff*, 791 F.3d at 641 (quoting *Cockrell v. city of Cincinnati*, 468 F.App'x 491, 495 (6th Cir. 2012)).  "When a suspect actively resists arrest, the police can use a taser . . . to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot."  *Id.* at 642.  In *Brown v. Giles*, the police were called regarding the plaintiff who had a warrant out for his arrest.  95 F.4th 436, 438 (6th Cir. 2024).  The police officer who responded told the plaintiff to "stay put," but when the officer stepped away the plaintiff "bolted."  *Id*. at 439.  The defendant fired his taser at plaintiff's head and back and the plaintiff fell on the ground and hit his head.  *Id*.  The Court of Appeals relied on *Perez* and found the fact that the officer tased the plaintiff was insufficient to establish excessive force.  *Id*. at 439–440.

Plaintiff did not stop when Defendant told him to "come here," then fled after Defendant started running toward him.  The Court of Appeals has held "flight, non-violent though it may be, is still a form of resistance."  *Cockrell*, 468 F. App'x at 496.  A taser may be used to subdue a suspect who is actively resisting.  *Rudlaff*, 791 F.3d at 641.  It was therefore not clearly established

Case 3:23-cv-00366-CLC-DCP   Document 41   Filed 09/27/24   Page 16 of 21   PageID #: 379

that the use of a taser on a fleeing suspect was excessive force. The fact that Defendant tased Plaintiff in the back does not change the analysis. *See Giles*, 95 F.4th at 440 (noting the lack of binding precedent to support an argument that a "head-body distinction" matters with regard to where on the suspect's body a taser is deployed). The same is true regarding the fact that Defendant did not warn Plaintiff that he was under arrest at the time he began to run or at the time the taser was deployed while Plaintiff was on pavement. Plaintiff does not identify binding precedent suggesting that either factor makes the force used against him excessive. *See e.g., Giles*, 95 F.4th at 439 (stating "we've held that it's reasonable for officers to tase fleeing suspects" but not holding warning is required).

Even taking all of Plaintiff's allegations as true to the extent they are not utterly discredited by the video, Defendant is entitled to qualified immunity because Plaintiff did not have a clearly established right not to be tased for fleeing arrest. Defendant's motion to dismiss Plaintiff's excessive force claim will be **GRANTED**.

### B.      Tennessee State Law Claims

Plaintiff asserts tort claims for (1) battery; (2) negligence; and (3) reckless or intentional infliction of emotional distress. (Doc. 20 ¶¶ 107–22.) Defendant moves to dismiss each claim on the basis that he has qualified immunity. (Doc. 21 at 10, 12.)

#### 1.      Battery

Plaintiff's battery claim alleges that Defendant's use of the taser on Plaintiff "constitutes a battery" because Defendant "had no legal justification for using such unreasonable force." (Doc. 20 ¶¶ 108–09.)

17

Although qualified immunity usually arises in the context of civil rights actions under § 1983, the Tennessee Court of Appeals has found that "the immunity recognized in those cases [is] not peculiar to § 1983 actions." *Cawood v. Booth*, No. E2007-02537-COA-R3-CV, 2008 Tenn. App. LEXIS 715, at *35–36 (Ct. App. Nov. 25, 2008) (quoting *Youngblood v. Clepper*, 856 S.W.2d 405, 407 (Tenn. Ct. App. 1993)).

"[U]nder Tennessee common law, 'an officer may only use the force reasonably necessary to accomplish [an] arrest, with due regard to the other attendant circumstances, such as his own safety or that of others present.'" *Butler v. City of Englewood*, No. 1:07-cv-184, 2008 U.S. Dist. LEXIS 82004, at *38 (E.D. Tenn. Aug. 25, 2008) (quoting *City of Mason v. Banks,* 581 S.W.2d 621, 626 (Tenn. 1979)). Also "[u]nder Tennessee law, a cause of action for assault and battery can be proven where an officer has caused damage by an excessive and unprovoked use of force." *Id*. (citing *City of Mason,* 581 S.W.2d at 626 (holding that the officer "was liable for the damages caused by his excessive and unprivileged use of force under the intentional tort of battery")). In *Butler*, the plaintiff's claims included false arrest and excessive force. *Id*. at *10, 13. The district court held its "analysis regarding [the] [p]laintiffs' § 1983 excessive force claim applie[d] equally to her Tennessee state law claims for assault and battery." *Id*. at *38. Because the plaintiff had grounds for an excessive force claim against the police officer defendant, she "additionally set forth adequate grounds . . . for assault and battery under Tennessee law." *Id*. at 38–39.

Plaintiff's § 1983 excessive force claim and Tennessee state law battery claim both turn on the reasonableness of Defendant's use of force. Because Defendant is entitled to qualified immunity for excessive force, he is also entitled to qualified immunity for the battery claim under

Tennessee law. *See id.* Defendant's motion to dismiss Plaintiff's battery claim will be **GRANTED.**

### 2. Negligence

Plaintiff's negligence claim asserts Defendant had a duty "to ensure [his] conduct conformed to applicable laws, policies, procedures, and generally accepted law enforcement standards." (Doc. 20 ¶ 115.) He also argues Defendant owed him "a duty of care to be free from excessive force to protect him the negligent use of the taser, and to protect him from serious injury." (*Id.* ¶ 116.) Plaintiff contends he suffered bodily injury proximately caused by Defendant's actions in breach of these duties. (*Id.* ¶¶ 117–18.)

"[A]n assault or a battery is not a negligent act," but rather an intentional tort. *Spearman v. Shelby Cty. Bd. of Educ.*, 637 S.W.3d 719, 733 (Tenn. Ct. App. 2021). Plaintiff's claim fails because an allegation of battery cannot form the factual basis for a negligence claim. Accordingly, Defendant's motion to dismiss Plaintiff's negligence claim will be **GRANTED.**

### 3. Reckless or Intentional Infliction of Emotional Distress

Plaintiff's reckless or intentional infliction of emotional distress claim states that Defendant "unnecessarily and unreasonably escalated a[n] . . . investigative stop . . . into a situation involving a serious and dangerous risk to [Plaintiff's] life." (Doc. 20 ¶ 121.) By Plaintiff's account, Defendant's "conduct was perpetrated with the intent to inflict, or with reckless disregard of the probability of inflicting, severe mental anguish on [Plaintiff]." (*Id.* ¶ 122.) Plaintiff alleges he "suffered extensive and severe injuries" as a result. (*Id.* ¶ 121.) Defendant argues both that he is entitled to qualified immunity and that Plaintiff fails to allege facts that meet the elements of the tort claim. (Doc. 21 at 12.)

19

Under Tennessee law, the elements of a reckless or intentional infliction claim are: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Leach v. Taylor*, 124 S.W.3d 87, 92 (Tenn. 2004) (quoting *Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997)); *see Cothran v. Durham Sch. Servs., L.P.*, 666 S.W.3d 369, 378 (Tenn. Ct. App. 2022).

The second prong of "outrageousness" requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hutson v. Shackelford*, 390 F. Supp. 997, 998 (E.D. Tenn. 1974) *see Gibson v. Thurman*, No. 3:07-CV-365, 2009 U.S. Dist. LEXIS 72680, at *22 (E.D. Tenn. Aug. 17, 2009) (finding "the three-way mistaken distribution of cremains and resulting confusion does not rise to the level of extreme conduct required under the outrageous conduct prong of a reckless infliction of emotional distress claim"); *Crawford v. J. Avery Bryan Funeral Home, Inc.*, 253 S.W.3d 149, 161 (Tenn. Ct. App. 2007) (finding outrageous conduct where defendants "systematically and commonly mishandled, desecrated, abused and commingled the remains of the decedents in a manner offensive to human sensibilities and/or expressly prohibited by law").

Defendant's use of the taser on Plaintiff is not "so conspicuously offensive as to rise to the required level of outrage" when compared with other conduct deemed not to be outrageous under Tennessee law. *See Gibson*, No. 3:07-CV-365, 2009 U.S. Dist. LEXIS 72680, at *23. Defendant's motion to dismiss Plaintiff's claim for reckless or intentional infliction of emotional distress will be **GRANTED.**

20

## V.    **CONCLUSION**

Defendant's motion to dismiss Plaintiff's claims for unlawful stop and seizure and excessive force (Doc. 21) will be **GRANTED IN PART** and **DENIED IN PART**.  Defendant's motion will be **DENIED** as to Plaintiff's wrongful seizure claim and **GRANTED** as to all other claims.

Plaintiff's claims for excessive force, battery, negligence, and reckless or intentional infliction of emotional distress will be **DISMISSED WITH PREJUDICE**.

**AN APPROPRIATE ORDER WILL ENTER.**


**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

21