UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BRIAN EUGENE HUX, ) | |
| ) | Case No: 3:23-CV-366 |
| *Plaintiff*, ) | |
| ) | Judge Curtis L. Collier |
| v. ) | |
| ) | Magistrate Judge Poplin |
| RANDALL WILLIAMS, KNOX ) | |
| COUNTY, TENNESSEE, and ) | |
| JOHN AND JANE DOES 1-5, ) | |
| ) | |
| *Defendants*. ) | |

## **MEMORANDUM**

Before the Court is a motion by Defendant Knox County, Tennessee to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 22.) Plaintiff has responded. (Doc. 30.) Defendant Knox County has replied. (Doc. 33.)

## I. **BACKGROUND**[1]

On October 10, 2023, Plaintiff filed a complaint in this Court against Defendant Williams, Defendant Knox County, and unidentified John and Jane Does 1-5. (Doc. 1.) Plaintiff invoked 42 U.S.C. §§ 1983 and 1988, and Tennessee state law as the legal basis for his complaint. (Doc. 1 at 14–30.) He asserted claims for excessive force, wrongful stop & seizure, failure to train and supervise, battery, negligence, and reckless or intentional infliction of emotional distress. (*Id.*) On January 26, 2024, Plaintiff amended his complaint. (Doc. 20.) Plaintiff's amended complaint contains the same legal claims raised in his original complaint. (*Compare* Doc. 1 *with* Doc. 20.)

---

[1] This summary of the facts accepts all the factual allegations in Plaintiff's complaint as true, *see Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Factually, Plaintiff's claims stem from a stop conducted by Knox County Deputy Randall Williams on October 10, 2022. (*Id.* ¶¶ 32–36.) The relevant altercation was captured through footage from Defendant Williams's body camera.[2] The parties dispute many of the facts of the encounter. At the motion to dismiss stage, "[i]f there is a factual dispute between the parties, [the Court] can only rely on the video[] over the complaint to the degree the video[] [is] clear and 'blatantly contradict[s]' or 'utterly discredit[s]' the plaintiff's version of events." *Bell v. City of Southfield, Mich.*, 37 F.4th 362, 364 (6th Cir. 2022). Unless the video blatantly contradicts or utterly discredits Plaintiff's version of the events, the Court "must accept [Plaintiff's] version as true." *Id.*

On October 10, 2022, Defendant Williams had heard a "be on the lookout" ("BOLO") transmission about Matthew Messer ("Messer"), a thirty-four-year-old, "white, 6-foot-tall male, with long brown hair, who was on a police hold but not in custody." (*Id.* ¶ 4.) Plaintiff was thirty years older than Messer, several inches shorter, and had long purple hair. (*Id.*) Plaintiff was walking along a road when Defendant Williams "spotted him and exited his cruiser." (*Id.* ¶ 3.) The body camera video begins with Deputy Williams driving his police cruiser. (Doc. 16 at 16:17.)

As shown in the video, shortly after arriving to the scene, Deputy Williams exited his car and began approaching Plaintiff. (Doc. 16 at 16:17-41–16:17:46.) As Defendant Williams approached Plaintiff, he instructed Plaintiff to "come here." (*Id.* at 16:17:47.) Plaintiff responded, "what for?" (*Id.* at 16:17:48.) Defendant Williams again stated, "come here man." (*Id.* at 16:17:49.) Plaintiff again responds, "what for?" (*Id.* at 16:17:50.) At that point, Defendant Williams began to run toward Plaintiff. (*Id.* at 16:17:51–16:17:53.) In response, Plaintiff also

---

[2] Plaintiff submits that the recording does not capture the beginning of the event.

2

sped up. (*Id*. at 16:17:53–16:17:54.) Plaintiff alleges he was "hurrying along, hardly 'running' or in 'full flight,' but perhaps 'high-stepping.'" (Doc. 20 ¶ 34.) But the body-camera video clearly shows Plaintiff speed up in response to Defendant Williams's pursuit. (*See* Doc. 16 at 16:17:53–16:17:54.) The Court finds that the video "utterly discredits" Plaintiff's version of the events, and the Court relies on the video evidence over Plaintiff's version of the events. *See Bell*, 37 F.4th at 364. Accordingly, the Court finds that Plaintiff had begun to run from Defendant Williams after Defendant Williams began running toward Plaintiff.

As Defendant Williams pursued Plaintiff, he told Plaintiff that he is going to tase him. (Doc. 16 at 16:17:53–16:17:55.) Defendant Williams's taser entered the camera view as Defendant Williams told Plaintiff he will tase him. (*Id.*) Seconds later, Plaintiff was hit with the taser and fell to the pavement. (*Id.* at 16:17:56–16:18:01.) Defendant Williams then called for backup while telling Plaintiff to remain lying on his stomach. (*Id.* at 16:18:01–16:18:27.) The body camera footage also shows assistance arriving to the scene and Defendant Williams traveling to the hospital, but the Court need not recount the portions of the video unrelated to Plaintiff's excessive force claims.[3]

Plaintiff alleges the failure "to train officers in the reasonable and justifiable use of force—the use of tasers—are so patently obvious" as to demonstrate liability under § 1983. (Doc. 20 ¶ 94.) Plaintiff also alleges Defendant Williams "lacked the tools that the County, [Knox County Sheriff's Office ("KCSO")], and Sheriff Spangler should have provided him to safely handle" the situation with Plaintiff, which is a predictable and recurring scenario. (*Id*. ¶¶ 101–02.) Plaintiff

---

[3] The Court notes that in the video, after Defendant Williams handcuffed Plaintiff, Defendant Williams asked Plaintiff "why are you running from the cops?" (Doc. 16 at 16:21:46.) Plaintiff responded that he has a warrant. (*Id.* at 16: 21:55.) Defendant Williams responded "look at all this you caused because you decided to run." (*Id.* at 16:22:00–16:22:05.)

3

asserts that, among other failures, County, KCSO, and Sheriff Spangler failed to adequately track unconstitutional uses of force, document use of force, and discipline officers found to have committed unlawful uses of force." (*Id.* ¶ 97.)

## II. STANDARD OF REVIEW

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera*, 551 F.3d at 466 (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 49 F.3d 710, 716 (6th Cir. 2005)). The court is not, however, bound to accept bare assertions of legal conclusions as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In deciding a motion under Rule 12(b)(6), a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P.

4

8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III. **DISCUSSION**

Defendant Knox County moves to dismiss Plaintiff's claims three, four, and five, for failure to train and supervise, battery, and negligence. (Doc. 22 at 2–11.) As for the failure to train and supervise claim, Defendant Knox County argues Plaintiff cannot satisfy the standard created in *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978) to sustain a finding of municipal liability. (*Id*. at 2–9.) Defendant Knox County also argues it is entitled to sovereign immunity as to Plaintiff's claims for battery and negligence. (*Id*. at 9–10.) Plaintiff's response states that he abandons his *Monell* claim as to the failure to supervise theory. (Doc. 30 at 3 n.1.) Plaintiff also abandons his negligence claim against Defendant Knox County. (*Id.*) Accordingly, the Court will only address Defendant's motion to dismiss Plaintiff's *Monell* claim brought under the failure to train theory and Plaintiff's battery claim.

A. ***Monell* Liability under the Failure to Train Theory**

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*¸ 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell* 436 U.S. at 694). "There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom." *Id.* These avenues include: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.* Here, Plaintiff alleges a violation based on the failure to train theory.

5

Defendant argues Plaintiff cannot succeed on his failure to train theory because there is "no factual allegation to support this claim." (Doc. 22 at 6.) Defendant Knox County states: "[Defendant] Williams' particular training is not identified at all, nor are there any deficiencies in training. It is not alleged that [Defendant] Williams received no training in *Terry* stops, or in the lawful use of a [t]aser, or that he did not attend law enforcement academy, or that he was not POST Certified." (*Id.*)

Plaintiff responds that the factual allegations and body camera video:

> demonstrate[ ] that [Defendant] Williams' lack of training . . . from the moment he heard the BOLO alert to the moment he tased [Plaintiff] . . . is patently obvious, particularly with respect to the gratuitous use of the [t]aser against a non-threatening, non-violent, free citizen who [Defendant] Williams realized was the wrong man before tasing him anyway in a situation filled with substantial risks of death or serious bodily injury.

(Doc. 30 at 13 (emphasis removed).) Plaintiff adds "[t]he BOLO . . . certainly, a routine occurrence for officers . . . did not describe Messer well enough for [Defendant] Williams to form a reasonable suspicious to conduct a *Terry* stop of anyone" and Defendant Williams "completely failed to seek additional information about Messer that would have solidified his knowledge of Messer's description." (*Id.*) According to Plaintiff "[t]hese actions reveal a complete lack of training on [Defendant] William's part with regard to basic procedures for making a *Terry* stop." (*Id.*) Plaintiff ultimately argues his allegations:

> satisfy the requirements for making out a *Monell* claim based upon a single violation and make it even more clear that dismissal of this claim at the pleading stage is . . . improper. Because municipal liability may be "triggered by evidence of a single violation of federal rights" when accompanied by a showing of the municipality's failure to train its employees to handle recurring situations presenting an obvious potential for such a violation, [Plaintiff[ plausibly alleges at this stage that his tasing falls under the "narrow range of circumstances" covered by the single incident exception.

6

(*Id.* at 16 (quoting *Bd. of Cty Commrs. Bryan Cty. v. Brown*, 520 U.S. 397, 398 (1997)).)

Defendant replies that Plaintiff's amended complaint "does not point to [Defendant] Knox County's specific training in this case; it does not point to a history of abuse; it does not establish a [*Monell*] policy; and it does not establish that the [*Monell*] policy was the moving force behind the purported constitutional violation." (Doc. 33 at 4.) Accordingly, Defendant submits the amended complaint "alleges no specific prior instances of unconstitutional conduct, and it asserts no facts that would indicate that [Defendant] Knox County 'was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" (*Id.* (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)).)

Defendant also argues that Plaintiff cannot succeed under the single violation approach because "there is no underlying constitutional violation." (Doc. 33 at 1.) The Court disagrees. The Court has previously determined Defendant Williams is not entitled to qualified immunity at the motion to dismiss stage, because viewing the facts in the light most favorable to Plaintiff, Plaintiff demonstrated that Defendant Williams violated his constitutional rights. (Doc. 41 at 16; Doc. 42.) Because a constitutional violation was found, "the question of municipal liability turns not simply on the actions of the individual state actors, but rather on the separate question of whether the violation may be attributed to a municipal policy or failure to train." *King v. City of Rockford, Michigan*, 97 F.4th 379, 399 (6th Cir. 2024) (quoting *Floyd v. City of Detroit*, 518 F.3d 398, 410 (6th Cir. 2008)).

"The Supreme Court has held that 'the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Amerson v. Waterford Tp.*, 562 F. App'x

7

484, 490 (6th Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). To prevail on a claim for failure to train, Plaintiff must prove that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Marcilis v. Redford Tp.*, 693 F.3d 589, 605 (6th Cir. 2012). Absent proof it resulted from an unconstitutional policy or custom, a county is not liable for a single incident resulting in a constitutional violation. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–824 (1985). Proving deliberate indifference for failure to train requires a plaintiff to "show prior instances of unconstitutional conduct demonstrating that the [defendant] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Marcilis*, 693 F.3d at 605.

"There are 'at least two situations in which inadequate training could be found to be the result of deliberate indifference.'" *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286–87 (6th Cir. 2020) (quoting *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003)). First, plaintiffs can show a "municipality has failed to act 'in response to repeated complaints of constitutional violations by its officers.'" *Id.* Second, plaintiffs can show that a municipality failed to equip officers with "specific tools to handle recurring situations." *Id.* (quoting *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). "In other words, the 'need for more or different training' may be 'so obvious, and the inadequacy so likely to result in the violation of constitutional rights,' that the City's failure amounts to deliberate indifference." *Romero v.City of Lansing, et. al.*, No. 1:23-CV-1322, 2024 WL 4223961, at *11 (W.D. Mich. Sept. 18, 2024) (quoting *Ouza*, 969 F.3d at 287).

Even when drawing all reasonable inferences in his favor, Plaintiff's allegations do not meet either approach to deliberate indifference. *See Ouza,* 969 F.3d at 286–87. Plaintiff alleges no specific facts about the Defendant's training program. Instead, Plaintiff states Defendant William's "lack of training . . . is patently obvious, particularly with respect to his gratuitous use of the Taser." (Doc. 30 at 13.) Plaintiff also states Defendant Williams "lacked the tools that [Defendant Knox County] . . . should have provided him to safely handle such a recurring situation." (Doc. 20 ¶ 102). Plaintiff's assertions are speculative and do not plausibly show deliberate indifference by Defendant Knox County in its training.

Furthermore, the evidence here supports at most a finding that there was a single incident in which a Knox County officer violated a citizen's federal rights. Plaintiff cannot merely rely on the facts of his own case to show deliberate indifference and instead must show several separate incidents of the alleged rights violation. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 434 (6th Cir. 2005); *see also Hester v. Chester Cnty., Tennessee*, No. 1:24-CV-1034-STA-JAY, 2024 WL 3641754, at *6 (W.D. Tenn. Aug. 2, 2024). Plaintiff alleges no specific facts that Defendant Knox County failed to act in response to repeated complaints of constitutional violations or a history of abuse. *See Ouza,* 969 F.3d at 286–87. Nor has Plaintiff identified any policy of Defendant that caused the injury at hand. *See Andrews v. Wayne Cnty. Mich.*, 957 F.3d 714, 721–22 (6th Cir. 2020).

Accordingly, Plaintiff fails to state a *Monell* claim against Defendant Knox County. *See Andrews v. Wayne Cnty. Mich.*, 957 F.3d 714, 721 (6th Cir. 2020). Defendant's motion to dismiss Plaintiff's claim based on the failure to train theory will be **GRANTED**. Defendant's *Monell* claim will be **DISMISSED WITH PREJUDICE**.

### B. Battery

Defendant Knox County also moves to dismiss Plaintiff's battery claim. (Doc. 22 at 9.) Pursuant to 28 U.S.C. § 1367, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Here, the Court has determined that Plaintiff's federal claims against Defendant Knox County will be dismissed because there is no constitutional violation to sustain a finding of failure to train under *Monell*. Because the Court will dismiss Plaintiff's federal claim, the Court will **DECLINE** to continue exercising supplemental jurisdiction over Plaintiff's state law claim. Accordingly, Plaintiff's state law battery claim will be **DISMISSED WITHOUT PREJUDICE**.

### IV. CONCLUSION

Defendant Knox County's motion to dismiss Plaintiff's *Monell* claim for failure to train will be **GRANTED** and Plaintiff's *Monell* claim will be **DISMISSED WITH PREJUDICE**. Because the Court will dismiss Plaintiff's sole federal claim against Defendant Knox County, the Court will **DECLINE** to exercise supplemental jurisdiction over Plaintiff's state law battery claim. Plaintiff's claim for battery will be **DISMISSED WITHOUT PREJUDICE**.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**